# EXHIBIT B

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

FRANCISCO CARIAS Jr.,　)
as the Personal Representative　)
of the ESTATE OF GUILLO CARIAS,　)
on behalf of the Estate, and his Survivors,　)
　)
  Plaintiff,　)
　)
v.　)
　)
AMERICAN AIRLINES, INC　)
　)
  Defendants.　)
　)

## COMPLAINT AND JURY DEMAND

Plaintiff, FRANCISCO CARIAS Jr., as Personal Representative of the Estate of GUILLO CARIAS[1], and on behalf his Estate and his survivors, sues Defendant, AMERICAN AIRLINES, INC ("Defendant") or ("AA"), and alleges:

### FACTUAL ALLEGATIONS

1. This is an action for wrongful death.

2. Francisco Guillermo Carias, artistically known as Guillo Carias, was a well-known jazz musician and beloved in the Dominican Republic.

3. In honor of Mr. Carias' abundant contribution to jazz music, in April 2022, the

---

[1] Guillo Carias shall be known as Mr. Carias for the purposes of this Complaint

presidency of the Dominican Republic invited Mr. Carias to receive an honorary, private decoration directly from President Luis Abinader. He was honored for his lifetime contributions at the presidential palace on April 28, 2022, and his entire extended family traveled there for this special event. The following day on April 29, 2022, he performed Piano, Clavietta and Guira at the National Theater of Santo Domingo, during a special event honoring his musical career.

4. On April 26, Mr. Carias flew from Raleigh NC to Santo Domingo, Dominican Republic accompanied by his wife and daughter.

5. In order to make the trip easier and more comfortable for Mr. Carias, he requested upgrades to 1st class on all legs of his round-trip ticket, as well as wheelchair and wheelchair assistance at the airport. Mr. Carias' request was acknowledged.

6. On his return to Raleigh, NC via Miami on May 11, he, again, called the airline in advance and requested a wheelchair and special assistance. At the airport in the Dominican Republic, American Airlines and the Dominican airport were there to greet him and help transport him to the airport's VIP lounge and then to the plane door when it was time to fly.

7. Upon arrival in Miami, there was no one to greet him at the door with a wheelchair or other means of assistance. Mr. Carias and his wife waited ten minutes, standing outside the plane door for a gate agent to arrive with the promised wheelchair. The gate agent then transported him to the American Express Centurion Lounge, where Mr. Carias and his wife waited for the last and final leg of his flight. There, another gate agent picked him up and transported him to the boarding gate.

8. Since there was no flight bridge, an American Airlines agent wheeled Mr. Carias down to the tarmac but stopped in front of a ramp that separated Mr. Carias from the plane's entrance. The ramp was very narrow and at an upward angle and with no easy place to rest other than halfway up when the ramp tilted once again to align to the plane door.

9. When the gate agent departed, Mr. Carias and his wife felt quite helpless but understood they would have to board the aircraft on their own, especially since they had received no further instruction. The American Airlines flight crew stood silently at the top of the ramp and looked down at Mr. Carias from the plane door but offered nothing in the way of help.

10. And so, Plaintiff's 76 year-old wife walked to the side and slightly behind Mr. Carias as he traversed the narrow ramp up to the plane door, with no help from any of the flight crew. Given Mr. Carias has also paid for 1st class and was in a wheelchair, he was the first to board. When the gate agent left him at the bottom of the ramp, he and Mrs. Carias felt the pressure of the entire airplane waiting for them to move up the ramp faster.

11. This walking the ramp without a wheelchair was enough to cause great strain on Mr. Carias' spine, causing severe and debilitating injuries. Once seated, the flight crew instructed Mr. Carias to swap seats with Mrs. Carias because he could not sit in the aisle. Mr. Carias was already experiencing strong pain which had expanded to his front by the time he arrived in Raleigh.

12. Subsequently, Mr. Carias sought emergency treatment, which eventually lead to emergency surgery. However, the surgery did not make his condition better, and he ultimately succumbed to his injuries.

13. As alluded to in his medical records, walking up the ramp, in his medical condition,

caused a wedge compression fracture of the T9-T10 vertebra, as well as exasperated secondary osteoporosis due to age.

## Jurisdiction and Venue

14. This is an action for damages in excess of fifty thousand dollars ($50,000.00), exclusive of interest, costs, attorneys' fees, and declaratory relief.

15. This Court has jurisdiction over the state law claims raised, pursuant to Article V, section 5(b) of the Florida Constitution.

16. Plaintiff has complied with all conditions precedent to filing this instant lawsuit.

17. Venue is proper in Miami-Dade County pursuant to Section 47.011, Florida Statutes, as the injury occurred in Miami-Dade County

## Parties

18. Plaintiff, FRANCISCO CARIAS Jr., is the duly appointed Personal Representative of the Estate of GUILLO CARIAS, having been appointed Personal Representative by the Probate Division of the Circuit Court in and for Wake County, North Carolina, File No. 2022 E 003760. This action is brought by Francisco Carias, the son of Guillo Carias, in his capacity as Personal Representative of the Estate of Guillo Carias and on behalf of his survivors.

19. AA has a principal address of 4333 Amon Carter Blvd., MD5675 FORT WORTH, TX 76155. AA is a common air carrier conducting business in Miami-Dade County, Florida. AA operates flights daily in North America throughout the whole United States, and elsewhere around the globe.

20. AA maintains its principal place of business in Fort Worth, Texas and maintains an agent for service of process in Florida

## ARGUMENTS ADRESSING THE AIR CARRIER ACCESS ACT ("ACAA")

21.     In our case, Plaintiff complains, not of discrimination based on his disability, but that American Airlines was negligent in that they owed a duty to him to keep Plaintiff safe, to attend to Plaintiff, and to provide Plaintiff with the wheelchair access he requested. American Airlines breached that duty in making him board first, removing a wheelchair from him, not tending to him, ignoring him as he stood there unable to go up the ramp to the airplane while the rest of the passengers were breathing down his neck to go up the ramp faster, and then did nothing at all. In that, Plaintiff does not complain of an ACAA violation, but simply a breach of duty which caused Plaintiff a harm, which ultimately lead to his death.

22.     The ACAA does not apply because:

> The ACAA regulations say nothing about how to move a disabled passenger from a plane seat to a wheelchair, how many people must assist the passenger, whether the passenger must be buckled in to the wheelchair, and the like. See 14 C.F.R. §§ 382.1 et seq. Because the regulations leave such issues open, federal law cannot possibly preempt all state tort claims in this area." *Hodges v. Delta Air Lines*, 2010 WL 5463832, at *6 (W.D.Wash.2010)

<u>Claim for Negligence and Wrongful Death</u>

23.     This wrongful death lawsuit is against Defendant American Airlines for the negligent treatment and failure to assist of Mr. Carias, and failing to protect him from harm while boarding the American Airlines plane.

24.     The negligent acts of Defendant AA's agents and employees were done while acting within the course and scope of their employ and/or agency with Defendant AA. Thus, Defendant AA is vicariously liable for the actions of its agents and employees when they committed the negligent acts alleged herein.

25.     Defendant AA owed Mr. Carias a non-delegable duty to use reasonable care to

ensure that Mr. Carias was properly cared for and helped as he was boarding the airplane. This is even more true when it turned out that Mr. Carias was severely disabled.

26. Defendant AA failed to perform its duty to use reasonable care to ensure that Mr. Carias was properly escorted to his airplane

27. The carelessness and negligence of AA and its employees and agents, as set forth above, were the direct and proximate cause of the serious personal injuries sustained by **Mr. Carias** and directly and proximately resulted in his death.

WHEREFORE, as a result of the tragic and untimely death of Mr. Carias in violation of Florida's Wrongful Death Act, the Survivors of and the Estate of Guillo Carias seek all possible damages under state law, including the following:

A. Maria Carias, wife of Guillo Carias, has sustained the following damages:

 1. Loss of support and services of her husband;
 2. Mental pain and suffering from date of injury; and

B. The Estate of Guillo Carias has sustained the following damages:

 1. Loss of earnings of Guillo Carias from the date of his death, less loss support of her survivors excluding contributions in kind with interest.
 2. Loss of perspective net estate accumulations;
 3. Funeral and burial expenses incurred as a result of the death of Guillo Carias that have become a charge against her estate or that were paid on her behalf; and

C. Each and every other Survivor has sustained the following damages:

 1. Loss of support and services of their family member; and
 2. Mental pain and suffering from the date of injury and continuing for the remainder of their life.

## Jury Trial Demand

Plaintiff demands trial by jury.

Respectfully submitted,

        Trayber Raikhelson Law Group PLLC.
        2750 NE 185th Street, Suite 206
        Aventura, Fl 33180
        Telephone:    (954) 895-5566
        Primary: arlaw@raikhelsonlaw.com


        /s/ Andre G. Raikhelson
        Andre G. Raikhelson, Esq.
        Bar Number: 123657

.